## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER WHITE, | : | Civil No. 1:21-CV-00781 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LYCOMING COUNTY PRISION, *et al.*,: | | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Christopher White ("Plaintiff") is a self-represented individual incarcerated as a pre-trial detainee at the Lycoming County Prison, in Williamsport, Pennsylvania.  Plaintiff initiated this action in April 2021, asserting that Defendants violated his First Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Eight Amendment, and Fourteenth Amendment rights.  (Doc. 56.)  He also raises claims under the Constitution of Pennsylvania.  (*Id.*)  Plaintiff names nineteen defendants, Doc. 56, and he has a pending motion to add a twentieth, Doc. 54.  Defendants' motion to dismiss Plaintiff's amended complaint, Doc. 43, and Plaintiff's motion for permissive joinder of parties, Doc. 54, are ripe for resolution.  For the following reasons, the court will grant in part and deny in part Defendants' motion to dismiss.  Only Plaintiff's Fifth and Fourteenth Amendment claims against Defendants Entz, Beck, and White will proceed.  All remaining claims will be dismissed as Plaintiff failed to state a claim for which

relief can be granted under Fed. R. Civ. P. 12(b)(6).  The court will also deny

Plaintiff's motion for permissive joinder of parties.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated his action by filing an initial complaint in April of 2021.

(Doc. 1.)  He filed an amended complaint in May of 2021.  (Doc. 9.)  This

amended complaint was screened and dismissed pursuant to 28 U.S.C.

§1915(e)(2)(B).  (Doc. 10.)  Plaintiff then filed a second amended complaint in

July of 2021.  (Doc. 11.)  Plaintiff filed a third amended complaint in November of

2021.  (Doc. 56.)  This is operative complaint in this case.

In the third amended complaint, Plaintiff alleged that he suffered from

Obstructive Sleep Apnea and that his doctor had prescribed the use of a CPAP[1]

machine.  (Doc. 56, p. 9, ¶ 1.)[2]  The complaint states that "every guard know[s] not

to cut the power off."  (*Id.*)  Plaintiff alleged that on four occasions electricity was

turned off to the cell block in which he was housed so he could not use his CPAP

machine to sleep: (1) on July 27, 2019, at 2:30 p.m., Correction Officer ("C.O.")

Willard turned off the electricity, Doc. 56, p, 9, ¶ 1; (2) on August 18, 2020, at

2:29 p.m., C.O. Kuhns turned off the electricity, *Id.*, p. 10, ¶ 5; (3) on August 25,

2020, at 4:26 p.m., C.O. Bailey turned off the electricity, *Id.*, p. 11, ¶ 7,; and (4) on

---

[1] "CPAP" stands for "continuous positive airway pressure."  *Keyes v. Catholic Charities*, 415 F. App'x 405, 407 (3d Cir. 2011).

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

November 4, 2020, C.O. Edler turned off the electricity, *Id.*, p. 9 ¶ 2.  Plaintiff also alleged that on November 4, 2020, the electricity was cut off at 4:19, but failed to allege if this was in a.m. or p.m.  (*Id.*)

Plaintiff alleges that Lieutenant Entz and Sergeant Beck placed him in the SMU[3] on February 21, 2021, at 11:05 a.m. because he refused to be housed with an inmate infected with COVID-19.  (*Id.*, p. 9, ¶ 3.)  He was without a CPAP machine for one night while in the SMU.  (*Id.*)  He alleges that on February 22, 2021, at 1:30 a.m., Sergeant C.O. White refused to let him out of the SMU so he could use his CPAP machine.  (*Id.*, p, 11, ¶ 8.)

Plaintiff also alleges that on October 19, 2021, at 4:45 p.m., Lieutenant Kennelly and C.O. Koletar placed a dirty extension cord in a brown bag on the top of his CPAP machine and that the machine was turned upside down with a full tank of water causing the water to get inside.  (*Id.*, p. 12, ¶ 11.)  He alleges that the air filters were wet and that he could not use the machine for two days while it dried.  (*Id.*)

Plaintiff alleges that he filed grievances regarding each of the above incidents.  (*Id.*, pp. 9–12, ¶¶ 1, 2, 3, 5, 7, 11.)  He brought claims against the President of the Lycoming County Prison Board, Judge Nancy L. Butts, alleging

---

[3] In his responsive briefing Plaintiff identifies "SMU" as Special Management Unit.  (Doc. 51, p. 8.)

that on or around March 21, 2021, and May 14, 2021, he received letters from her refusing to address the grievances he filed regarding the CPAP machine.  (*Id.*, p. 10, ¶ 4.)  He brought claims against Anthony Mussare, Scott Metzger, and Richard Mirabito, members of the Lycoming County Prison Board, alleging that on November 9, 2020, November 20, 2020, and April 21, 2021, he received denials of his grievances as "procedurally improper."  (*Id.*, p. 11, ¶ 6.)

Additionally, Plaintiff raises claims against Lieutenant Kennelly, Sergeant Stutzman, and Sergeant DeFrancisco as shift supervisors for failing to enforce "the rules."  (*Id.*, p, 11, ¶ 9.)  He raises claims against Warden Brad Shoemaker, Deputy Warden Ryan Barnes, and Deputy Warden Chris Ebner for allowing guards to act with deliberate inference.  (*Id.*, pp. 12–13, ¶¶ 10, 13.)  He raises claims against the facility of Lycoming County Prison for the deprivation of his constructional rights. (*Id.*, p. 13, ¶ 12.)

Defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (Doc. 43.)  Additionally, Plaintiff has filed a motion to join Lycoming County as a defendant.  (Doc. 54.)  The parties have briefed the issues and the motions are ripe for review.

## JURISDICTION

The court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter

jurisdiction in civil cases arising under the Constitution, laws, or treaties of the

United States.  Venue is proper in this district because the alleged acts and

omissions giving rise to the claims occurred at Lycoming County Prison, located in

Lycoming County, Pennsylvania, which is in this district. *See* 28 U.S.C. §

118(b).

### STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mark v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.

6

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014).  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Plaintiff alleges that Defendants' conduct in relation to the interrupted use of the CPAP machine deprived him of his First Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Eight Amendment, and Fourteenth Amendment rights and his rights under the Constitution of Pennsylvania.  (Doc. 56.)

### A. Fifth, Eighth, and Fourteen Amendment Claims

As an initial matter, the Eighth Amendment does not apply until an inmate has been both convicted of and sentenced for his crimes. *See Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005).  Thus, an inmate awaiting sentencing must look to either the Fifth

Amendment's or the Fourteenth Amendment's Due Process Clause for protection.
*See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). Here, Plaintiff was a pretrial detainee at the time of the alleged conduct. (Doc. 59, p. 4.) He alleges in his responsive briefing that a Pennsylvania Board of Probation and Parole detainer was in place until April 4, 2020, and argues that this means he qualifies as "sentenced." (Doc. 51, p. 13.) "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230. The complaint states that Plaintiff is a pretrial detainee. Therefore, based on the complaint, Plaintiff has failed to allege an Eighth Amendment claim for which relief can be granted. All claims under the Eighth Amendment will be dismissed without prejudice.

The Third Circuit's standard for evaluating a pretrial detainee's claim of inadequate medical treatment under the Due Process Clause is not entirely clear. Due process rights of a pretrial detainee are at least as great as the Eighth Amendment rights of convicted prisoners. *See Montgomery v. Ray*, 145 F. App'x 738, 740 (3d Cir. 2005). The Third Circuit has suggested that the appropriate standard is "whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt," *Id*., implying culpability under the Fifth Amendment. However, the Third Circuit has also

evaluated medical care claims raised by pretrial detainees under the Fourteenth Amendment using the Eighth Amendment standard. *See Hubbard*, 399 F.3d at 166 n. 22 ("[E]ven though the constitutional protections afforded [to] prisoners and pretrial detainees against inadequate medical care arise from [the prohibition on cruel and unusual punishment and due process, respectively], the standards governing the provision of medical care to each class are similar.").

Since the due process rights of pretrial detainees are at least as great as the Eighth Amendment rights of convicted prisoners, *Ray*, 145 F. App'x at 740, the court will screen the complaint under the Eighth Amendment standard. Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he "knows of and

9

disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff raises three distinct set of facts surrounding the interrupted use of is CPAP machine: (1) when the electricity was turned off on four separate occasions; (2) when he was denied access to his CPAP machine while housed in the SMU; and (3) when his CPAP machine was damaged. (Doc. 56.)

### 1. Interrupted Use Due to Turning Off the Electricity

Here, Plaintiff has alleged that on four separate occasions electricity was turned off to the cell block in which he was housed. Specifically, Plaintiff alleges that: (1) on July 27, 2019, at 2:30 p.m., Defendant Willard turned off the electricity, Doc. 56, p. 9, ¶ 1; (2) on August 18, 2020, at 2:29 p.m., Defendant Kuhns turned off the electricity, *Id.*, p. 10, ¶ 5; (3) on August 25, 2020, at 4:26 p.m., Defendant Bailey turned off the electricity, *Id.*, p. 11, ¶ 7; and (4) on November 4, 2020, Defendant Edler turned off the electricity, *Id.*, p. 9, ¶ 2. Plaintiff also alleged that on November 4, 2020, the electricity was cut off at 4:19, but failed to allege if this was in a.m. or p.m. (*Id.*)

Plaintiff has failed to allege that he was sleeping and using the CPAP machine at the times the electricity was turned off. (Doc. 56.) The electricity appears to have been turned off during the afternoon on the dates in question, rather than at night. The court will not infer that Plaintiff was sleeping between

2:30 p.m. and 4:30 p.m.  Plaintiff implies that he was sleeping and using the CPAP machine in only one of the four instances: on July 27, 2019, at 2:30 p.m. Defendant Willard "was acting under the color of state law when cut the power to K-Block causing me to suffocate in my sleep."  (Doc. 56, p. 9.)  However, without pleading facts sufficient to establish that he was sleeping and using the CPAP machine at the time the electricity was cut off, the complaint fails to make an objective showing that his medical needs were serious at the times the electricity was turned off as required under *Pearson*.  Therefore, these claims against Defendants Willard, Kuhns, Bailey, and Edler will be dismissed without prejudice.

### 2.  Interrupted Use Due to being Housed in the SMU

Plaintiff also raises claims against Defendants Entz, Beck, and White for refusing him access to his CPAP machine for the period he was housed in the SMU.  (Doc. 56, pp. 9–11.)  Here, Plaintiff has made two factual allegations regarding the interruption of his use of the CPAP machine while housed in the SMU: (1) that he was outright refused his CPAP machine while in the SMU; and (2) that the outlets in the SMU were not compatible with the CPAP machine, therefore being housed in the SMU itself was the cause of interrupted use.  *Id*. Liberally reading the complaint, Plaintiff has alleged that the CPAP machine is prescribed by a doctor and that he informed Defendants Entz, Beck, and White of the need for the CPAP machine, i.e. the Defendants had knowledge of the need for

the machine.  (Doc. 56, pp. 9–11.) ("I spent the entire night without my CPAP machine which they refused to give me," and "White refused to let me out of the SMU so I can use my Dr[.] prescribed CPAP machine.")  Therefore, Plaintiff has alleged sufficient facts for these claims to survive a motion to dismiss.

### 3.  Interrupted Use Due to CPAP Machine Damage

Plaintiff raises claims against Defendants Kennelly[4] and Koletar stemming from putting a dirty extension cord in a brown bag on top of his CPAP machine and turning the CPAP machine upside down with a full tank of water causing the air filters to become wet.  (Doc. 56, p. 12.)  He asserts that this resulted in him being unable to use the CPAP machine for two days.  (*Id*.)  However, Plaintiff failed to allege any facts to establish that the conduct of these Defendants was intended to damage the CPAP machine rather than an accident that happened to cause damage.  Without such an allegation, this claim does not state a claim for deliberate indifference as set forth in *Farmer*.  511 U.S. at 826 ("Deliberate indifference entails something more than negligence.")  Therefore, these claims against Defendants Kennelly and Koletar will be dismissed without prejudice.

---

[4] In addition to suing Sergeant C.O. Kennelly based on his personal actions involving turning the CPAP machine upside down, Plaintiff is also suing Sergeant C.O. Kennelly based on his role as a supervisor.  (Doc. 56, p.11.)  The court addresses the claims against Sergeant C.O. Kennelly based on turning the CPAP machine upside down separately from the claims arising from his role as a supervisor, which are addressed below

**B. Claims Against Lycoming County Prison**

Plaintiff raises claims against the facility of Lycoming County Prison for the deprivation of his constitutional rights under 42 U.S.C. § 1983. (*Id*., ¶ 12.)

As set forth above, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that misconduct was committed by a *person* acting under color of state law; and that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West*, 487 U.S. at 48 (emphasis added). It is well-settled that neither a state nor its agencies, are considered to be a "person" as that term is defined under § 1983 and, therefore, they are not subject to a § 1983 suit. *Hafer v. Melo*, 502 U.S. 21, 25–27 (1997). Similarly, neither a prison nor a department within a prison are persons subject to suit under § 1983. *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir, 1973); *Edwards v. Northampton County*, 663 Fed. Appx. 132, 136 (3d Cir. 2016) (extending *Fischer* to include county prisons).

Therefore, to the extent that Plaintiff raised constitutional claims against Lycoming County Prison in his third amended complaint, these are dismissed with prejudice.

### C. Claims Against Prison Supervisors

Plaintiff raises claims against prison supervisors on the basis of *respondeat superior* including Defendants Shoemaker, Barnes, Ebner, Stutzman, Sergeant Kennelly, and DeFrancisco.  (Doc. 56, pp. 11–13.)

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  *See also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (citing *Rode*).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Rode*, 845 F.2d at 1207.

In this case, Plaintiff is suing Defendants Shoemaker, Barnes, Ebner, Stutzman, Kennelly, and DeFrancisco based on their role as supervisors.  Plaintiff alleges that Defendants Shoemaker and Barns "allowed Lycoming County Prison guards to act with deliberate indifference."  (Doc. 56, p. 12, ¶ 10.)  Plaintiff alleges that Defendant Ebner "allowed [Lycoming County Prison] guards to act with deliberate indifference."  (*Id*., p. 13. ¶ 13.)  Plaintiff alleges that Defendants Kennelly, Stutzman, and DeFrancisco "failed to enforce the rules as shift supervisors."  (*Id*., p. 11. ¶ 9.)  However, there are no factual allegations demonstrating that these Defendants were personally involved or had actual knowledge and acquiescence based on their roles as supervisors.  Therefore,

Plaintiff has failed to state a claim for which relief can be granted, and these claims will be dismissed without prejudice.

### D. Claims Against Members of the Lycoming County Prison Board

Plaintiff also raises claims against multiple members of the Lycoming County Prison Board: President Judge Nancy Butts, Commissioner Anthony Mussare, Commissioner Scott Metzger, and Commissioner Richard Mirabito. (Doc. 56, pp. 6–7.)  Plaintiff premises these claims on these members' involvement in denying his grievances concerning his CPAP machine.  (Doc. 56, ¶¶ 4–6.)

As set forth above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  *Rode*, 845 F.2d at 1207-08.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Rode*, 845 F.2d at 1207.  A defendant's contemporaneous personal knowledge and acquiescence is required to establish personal knowledge.  *Rode*, 845 F.2d at 1207-08.  After-the-fact knowledge is not sufficient.  "Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement."  *Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *see also Brooks v. Beard*, No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (holding that a state prisoner's

allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). Since Plaintiff's claims against these defendants are solely based on their review of his grievances, he failed to establish personal involvement. Therefore, he has failed to state a claim against for which relief can be granted. The claims will be dismissed with prejudice.

### E. First Amendment Claims

Plaintiff alleges that Defendants violated his First Amendment rights. (Doc. 56, p. 14.)

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Even generously construed, there is no fact alleged in Plaintiff's complaint that implicates the First Amendment. Therefore, all claims under the First Amendment will be dismissed with prejudice.

### F. Fourth Amendment Claims

Plaintiff alleges that Defendants violated his Fourth Amendment rights. (Doc. 56, p. 14.) The Fourth Amendment protects "[t]he right of the people to be

secure in their persons ... against unreasonable searches and seizures."  U.S. Const.

amend. IV.  An inmate has some constitutional protection under the Fourth

Amendment, but an inmate's rights are limited by the need to maintain prison

security.  *Bistrian*, 696 F.3d at 373; *see also Bell*, *441* U.S. at 558–60.

Classification into housing units is constitutionally permitted so long as procedural

due process is afforded to the inmate.  *Bistrian*, 696 F.3d at 373.

Plaintiffs fails to set forth any facts related to a purported search or seizure

in violation of his Fourth Amendment rights.  Moreover, the complaint fails to

state a claim for which relief can be granted in regards to Plaintiff's transfer to the

SMU.  He alleges that the transfer was because he refused to be housed with an

inmate infected with COVID-19 and because he refused a COVID-test.  (Doc. 56.

pp. 9–10.)  Plaintiff has failed to allege that the relocation was done as punishment

rather than as part of the COVID-19 protocols of the facility.[5]  Additionally, he

fails to allege any deprivation of procedural due process associated with the

transfer.  As such, the Fourth Amendment claims will be dismissed without

prejudice.

_____

[5] Plaintiff attached a Lycoming County Inmate Grievance Form alleging that he was relocated to the SMU to purposely expose him to COVID-19.  (Doc. 26, p. 19.)  However, this form does not appear to have been filed as there is no grievance number or administrative response.  (*Id*.)

### G. Sixth Amendment Claims

Plaintiff alleges that his Sixth Amendment Rights were violated.  (Doc. 56,

p. 14.)  The Sixth Amendment to the Constitution provides certain criminal

procedural rights:

> In all criminal prosecutions, the accused shall enjoy the right to a
> speedy and public trial, by an impartial jury of the State and district
> wherein the crime shall have been committed, which district shall have
> been previously ascertained by law, and to be informed of the nature
> and cause of the accusation; to be confronted with the witnesses against
> him; to have compulsory process for obtaining witnesses in his favor,
> and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.  While Plaintiff was a pretrial detainee at the time of the

alleged incidents, none of the alleged facts give rise to a Sixth Amendment claim.

Therefore, all Sixth Amendment claims will be dismissed with prejudice.

### H. State Constitutional Claims

Plaintiff alleges that his "State and Federal Constitutional rights were

violated . . ."  (Doc. 56, p. 14.)  The Third Circuit has found that "[n]o

Pennsylvania statute establishes, and no Pennsylvania court has recognized a

private cause of action for damages under the Pennsylvania Constitution."  *Pocono*

*Mountain Charter School v. Pocono Mountain School Dist.*, 442 Fed. App'x 681,

688 (3d. Cir. 2011).  Therefore, all claims under the Constitution of Pennsylvania

will be dismissed with prejudice.

18

### I.  Motion for Joinder of Parties

On March 23, 2022, Plaintiff filed a motion for permissive joinder of parties seeking to join Lycoming County as a municipal defendant.  (Doc. 54.)  Therefore, the court will explore the issue of whether a municipality can be sued as a "person" under § 1983.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983.  *Id.* at 690.  But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees."  *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).  Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels."  *Monell*, 436 U.S. at 690–91.  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Jiminez*, 503 F.3d at 249.

19

"A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

There is an alternative route to municipal liability premised on a failure to train, monitor, or supervise its agents:

> A municipality may be held liable under § 1983 for failure to train, monitor, or supervise, [but] only where the plaintiff can "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."

*Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009) (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)).

Plaintiff's motion refers to an "inference of a connection" between the county and the facts alleged in the complaint, Doc. 54, p. 2, but fails to identify a policy or failure on the part of the county that has a causal nexus with the alleged injuries Plaintiff sustained.  Therefore, the motion will be denied.

20

CONCLUSION

Defendants' motion to dismiss, Doc. 43, will be granted in part and denied in part.  Plaintiff's Eighth Amendment claims against Defendants Willard, Kuhns, Bailey, Edler, Entz, Beck, and White will be dismissed without prejudice.  Plaintiff's Fifth and Fourteenth Amendment claims against Defendants Willard, Kuhns, Bailey, and Edler will be dismissed without prejudice.  Plaintiff's Fifth and Fourteenth Amendment claims against Defendants Entz, Beck, and White will survive the motion to dismiss.  Plaintiff's claims against Defendants Kennelly and Kolter relating to the temporary damage to the CPAP machine will be dismissed without prejudice.  Plaintiff's claims against the Lycoming County Prison and the members of the Prison Board will be dismissed with prejudice.  Plaintiff's claims against Defendants Shoemaker, Barnes, Ebner, Stutzman, Kennelly, and DeFrancisco in their roles as supervisors will be dismissed without prejudice.  Plaintiff's claims under the First, Fourth, and Sixth Amendments will be dismissed with prejudice.  Plaintiff's claims under the Pennsylvania State Constitution will be dismissed with prejudice.

Plaintiff's motion for permissive joinder of parties, Doc. 54, will be denied.

Plaintiff will be granted leave to file an amended complaint, but he must clearly label the document as his fourth amended complaint and use the docket number assigned to this case.  Further he is cautioned that any amended pleading

filed with the court replaces all prior pleadings filed with the court.  Therefore,

Plaintiff must replead all remaining claims against Defendants, including those that

were not dismissed by the court.

An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: August 24, 2022