# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER WHITE,    :   Civil No. 1:21-CV-00781
        :
    Plaintiff,     :
        :
    v.      :
        :
LYCOMING COUNTY PRISON, *et al.*, :
        :
    Defendants.   :   Judge Jennifer P. Wilson

## MEMORANDUM

Christopher White ("Plaintiff") is a self-represented individual currently incarcerated at the State Correctional Institution in Camp Hill, Pennsylvania ("SCI-Camp Hill"). Before the court is Defendants' motion to dismiss Plaintiff's fourth amended complaint. (Doc. 81.) For the following reasons, the court will grant Defendants' motion and dismiss the complaint.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action in April of 2021 by filing a complaint naming seven defendants and bringing claims of deliberate indifference to a serious medical need in violation of the Eight Amendment while he was a pretrial detainee at Lycoming County Prison ("LCP"). (Doc. 1.) Plaintiff entered a motion requesting leave to "clarify and explain errors" in his complaint. (Doc. 6.) On May 10, 2021, the court entered an order granting Plaintiff's motion. (Doc. 8.) Plaintiff then filed an amended complaint in May of 2021 that named sixteen

defendants and attached inmate grievance forms, but failed to state any factual allegations or set forth any claims against these defendants. (Doc. 9-1.) On July 12, 2021, the court reviewed the amended complaint and dismissed it without prejudice for failing to state a claim and granted Plaintiff leave to file a second amended complaint. (Doc. 10.)

Plaintiff then filed a second amended complaint in July of 2021 naming five defendants. (Doc. 11.) The court ordered this complaint to be served on the five named defendants on November 1, 2021. (Doc. 13.) On November 18, 2021, the court received and filed Plaintiff's third amended complaint. (Doc. 56.) This third amended complaint named fourteen defendants and brought claims under the First Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, and Eighth Amendment, Fourteenth Amendment, and the Constitution of Pennsylvania. (*Id*.)

Defendants filed a motion to dismiss the third amended complaint for failing to state a claim upon which relief can be granted. (Doc. 43.) On March 23, 2022, Plaintiff filed a motion seeking leave to add Lycoming County as a defendant in this action. (Doc. 49.) On August 24, 2022, the court entered a memorandum and order granting Defendants' motion, in part. (Docs. 60, 61.) Plaintiff's Fifth and Fourteenth Amendment claims against Defendants Entz, Beck, and White were not dismissed. (Doc. 61.) The court dismissed claims against LCP and the members

2

of the prison Board, all First Amendment claims, all Sixth Amendment claims, and all constitutional claims under the Pennsylvania Constitution were dismissed with prejudice. (*Id.*) The court also dismissed Eighth Amendment claims against Defendants Willard Kuhns, Bailey, Edler, Entz, Beck, and White without prejudice. (*Id.*) The court dismissed Plaintiff's Fifth and Fourteenth Amendment claims against Defendants Willard, Kuhns, Bailey, and Edler without prejudice. (*Id.*) The Fifth, Eighth, and Fourteenth Amendment claims against Defendants Kennelly and Kolter relating to the temporary damage to the Plaintiff's CPAP machine were dismissed without prejudice. (*Id.*) Plaintiff's Fourth Amendment claims were dismissed without prejudice. (*Id.*) The court granted Plaintiff leave to "file an amended complaint against Defendants that correct the deficiencies identified in the accompanying Memorandum." (*Id.*) Likewise, the court denied Plaintiff's request to join Lycoming County as a defendant, but granted him leave to added defendants his fourth amended complaint. (Doc. 60, p. 19–20, Doc. 72, p. 1–3.)[1]

On September 1, 2022, Plaintiff filed his fourth amended complaint. (Doc. 62.) This is the operative complaint currently before the court. This complaint names eighteen defendants: (1) Lycoming County; (2) Chase Willard, Correctional Officer, ("Willard"); (3) Harry Entz, Lieutenant Correctional Officer ("Entz"); (4)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Cody Beck, Sergeant Correctional Officer ("Beck"); (5) Ryan Barnes, Deputy Warden ("Barnes"); (6) Brad Shoemaker, Warden ("Shoemaker"); (7) Nate Edler, Correctional Officer ("Edler"); (8) Ron Kuhns, Correctional Officer ("Kuhns"); (9) Gene Kinnelley, Lieutenant Correctional Officer ("Kinnelley"); (10) Tim Stutzman, Sergeant Correctional Officer ("Stutzman"); (11) Michael White, Sergeant Correctional Officer ("White"); (12) Joseph DeFrancisco, Sergeant Correctional Officer ("DeFrancisco"); (13) Chris Ebner, Deputy Warden ("Ebner"); (14) Nathan Koletar, Correctional Officer, ("Koletar"); (15) Devin Bailey, Correctional Officer ("Bailey"); (16) Joshua Rogers, Lieutenant Correctional Officer ("Rogers"); (17) Maggie Marshall, Correctional Officer ("Marshall"); and (18) Correctional Officer Chubb ("Chubb").  (*Id*.)  Plaintiff alleges that he was both a pretrial detainee and a convicted and sentenced state prisoner at the time of the alleged facts set forth in the fourth amended complaint. (*Id*., p. 3.)  He alleges he was arrested on April 22, 2019 while he was on state parole with a state detainer and sentence unrelated to his April 22, 2019 charges resulting in his pretrial detention.  (*Id*.)  He then alleges that the detainer was dropped on April 4, 2020.  (*Id*.)

Plaintiff's alleged facts address the interruption of his use of his continuous positive airway pressure ("CPAP") machine from 2019 through 2021.  (Doc. 62.) Specifically, Plaintiff alleges that he suffers from high blood pressure, diabetes,

and obstructive sleep apnea, which requires him to use a prescribed CPAP machine while sleeping as treatment for the obstructive sleep apnea.  (*Id*., p. 8.)  He alleges that CPAP machines are required to be plugged into direct current and cannot be plugged into an electrical outlet controlled by a switch or an extension cord.  (*Id*., pp. 8–9.)  He also alleges that CPAP machines can only be used with distilled water.  (*Id*., p. 9.)  He states that LC policy, customs, and practice require family and friends bring in the distilled water from the outside for inmates with CPAP machines.  (*Id*.)  He also alleges that LCP does not have outlets inside cells for inmates with CPAP machines or a medical unit to house inmates with serious medication conditions that requirement equipment such as CPAP machines.  (*Id*.)  Then, Plaintiff sets forth twelve separate allegations which the court reproduces in the order in which Plaintiff asserts them.

First, Plaintiff alleges that he caught Covid-19 twice since being incarcerated because of LCP's failure to adhere to CDC standards and protocols to prevent the spread of the virus.  (*Id*., p. 10.)

Second, Plaintiff alleges that he informed the medical department at LCP of his sleep apnea, that he stops breathing while sleeping, and that he requires a CPAP machine.  (*Id*.).  His family dropped off the CPAP machine and distilled water for his use.  (*Id*.)  He states that LCP placed a paper inside the subcontrol that read "do not turn off the power to K-Block CPAP machine."  (*Id*.)  He states

that because of his condition, LCP administration placed him on observation status and required correctional officers to make a round on the housing unit every fifteen minutes and scan with their smart device. (*Id*., p. 11.) He alleges that LCP does not have a policy, custom, or practice for inmates with CPAP machines inside the cells and only permits inmates to keep a CPAP machine inside their cells when authorized by and consistent with the directives of prison health care providers. (*Id*.) He alleges that LCP has failed to train, monitor, and supervise its agents and does not have an adequate medical system to identify and treat inmates with obstructive sleep apnea. (*Id*., pp. 11–12.)

Third, Plaintiff alleges that his CPAP machine was prescribed by his outside primary care doctor prior to his April 22, 2019 arrest. (*Id*., p. 12.) He alleges that on July 27, 2019 he was taking his routine afternoon nap after the general population gym "like I do everyday," and was using his CPAP machine. (*Id*., pp. 12–13.) He alleges that at about 2:30 pm, Defendant Willard turned off the power to the K-93-cell where he was housed causing him to suffocate in his sleep. (*Id*., p. 13.) He alleges he woke up gasping for air and could not breathe. (*Id*.) He alleges that power was restored at 3:30 pm. (*Id*.) He alleges that because of this incident, he was moved to L-2-cell on L-Block to eliminate this from happening again. (*Id*.) He stated he filed a grievance dated August 7, 2019. (*Id*.)

Fourth, Plaintiff alleges that on November 4, 2020, he was taking his nap after a routine count during lock down.  (*Id.*)  He states that while he was sleeping and using his CPAP machine, Defendant Edler turned off the power to K-93-Cell.  (*Id.*)  He states, "I woke up immediately because I could not breath from suffocation."  (*Id.*)  He alleges this was done in retaliation for the August 19, 2020 grievance pending against Defendant Edler for turning off power to L-2-cell at 11:26 a.m., making power unavailable for the use of his CPAP machine.  (*Id.*)

Fifth, Plaintiff alleges that on February 21, 2021, at 11:05 am, Defendants Entz, DeFrancisco, and Beck were under directives from Defendants Shoemaker, Barnes, and Ebner to put him in the SMU because he refused to be housed in J-52-cell with an inmate infected with Covid-19.  (*Id.*, p. 14.)  He alleges that he spent an entire night without his CPAP machine, and they refused to it give to him.  (*Id.*)  He alleges he already had Covid-19 and was in fear of catching it again.  (*Id.*)

Sixth, Plaintiff alleges on February 2, 2021, at 1:30 a.m., Defendants White and Rogers came to the SMU for showers and when asked, they refused to let him out of the SMU in order use his CPAP machine.  (*Id.*)  He states that the SMU has no outlet inside the cells to plug in his CPAP machine into a direct current.  (*Id.*)

Seventh, Plaintiff alleges that on August 18, 2020, at or around 2:29 p.m., he was taking an afternoon nap and using his CPAP machine when Defendant Kuhns

turned off the power to L-2-Cell causing him to wake up gasping for air because he could not breathe.  (*Id*.)

Eighth, Plaintiff alleges that on August 25, 2020, at 4:26 p.m., Defendant Bailey turned off the power to L-2-Cell while he was still sleeping and using the CPAP machine.  (*Id*., p. 15.)  He states that this caused him to "wake up gasping for air because I could not breath."  (*Id*.)  Plaintiff alleges that he "always" takes naps during afternoon lockdowns "like most inmates."  (*Id*.)  He states that Correctional Officers can clearly see inside each cell from the subcontrols and would know if an inmate was inside their cell and sleeping.  (*Id*.)

Ninth, Plaintiff alleges that on October 19, 2021, at 4:45, Defendants Kinnelly, Stutzman, and Koletar placed him in the SMU for refusing to cell up with an inmate from quarantine.  (*Id*.)  He alleges that he told Defendant Koletar that he had caught Covid-19 twice and was in fear of catching it again.  (*Id*.)  He alleges that in retaliation for refusing to relocate, a dirty extension cord from off the day room floor in a brown paper bag was placed on top of his CPAP machine and his CPAP machine was turned upside down with a full tank of water causing water to get inside and wet the air filters.  (*Id*.)  He does not state who placed the dirty extension cord on the machine or who turned it upside down.  He states he had to take the CPAP machine apart to see what other damage was caused and he could not use the machine for two days.  (*Id*., pp. 15–16.)

Tenth, Plaintiff alleges that on December 21, 2021, at 5:00 p.m., he asked Defendant Marshall for his jug of distilled water out of the subcontrol for use in his CPAP machine. (*Id*., p. 16.) He states that Defendant Marshall refused. (*Id*.) He requested to see a supervisor, and Defendant Marshall stated, "why don't you sue me too!" (*Id*.) He alleges he was not provided with the water. (*Id*.)

Eleventh, Plaintiff alleges that on November 21, 2021, at 12:12 a.m., he asked Defendant Chubb for his water jug out of the subcontrol to fill the tank in the CPAP machine. (*Id*.) He states that Defendant Chubb refused and told him to get the water out of the sink in his cell. (*Id*.)

Twelfth, Plaintiff alleges that on July 6, 2021, at 5:15 p.m., he asked Defendant Edler for his water jug and extension cord for his CPAP machine. (*Id*.) Plaintiff states that Defendant Edler refused in retaliation for Plaintiff naming him in this civil action. (*Id*., p. 17.) Plaintiff alleges that Defendant Edler said, "no, write a grievance, or better yet why don't you sue me again." (*Id*.) He then alleges that Defendant Edler took his shoes and threatened to hang him while using a racial slur. (*Id*.)

Plaintiff alleges that these actions were in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution. (*Id*., p. 18.) For relief, Plaintiff seeks monetary, punitive, and presumed damages. (*Id*.) He is also

seeking injunctive relief requiring LCP to install direct current outlet in cells for inmates with CPAP machines.  (*Id.*, p. 19.)

### JURISDICTION

The court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States and supplemental jurisdiction over the state law tort claims pursuant to 28 U.S.C. § 1367.

### VENUE

Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at LCP, located in Lycoming County, Pennsylvania, which is in this district. See 28 U.S.C. § 118(b).

### STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

      The pleadings of self-represented plaintiffs are to be liberally construed and

held to a less stringent standard than formal pleadings drafted by attorneys.  *See*

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193

(3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be

granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile.

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.

2014).  A complaint that sets forth facts which affirmatively demonstrate that the

plaintiff has no right to recover is properly dismissed without leave to amend.

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

**DISCUSSION**

**A. Plaintiff's Fourth Amendment Claim Will Be Dismissed With Prejudice.**

Plaintiff alleges that Defendants violated his Fourth Amendment rights. (Doc. 62, p. 18.)  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  An inmate has some constitutional protection under the Fourth Amendment, but an inmate's rights are limited by the need to maintain prison security.  *Bistrian*, 696 F.3d at 373; *see also Bell v. Wolfish, 441* U.S. 441, 558–60 (1979).  The Fourth Amendment's application to prison settings has been limited to issues regarding bodily integrity.  *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016) ("We conclude that a right to privacy in one's own body, unlike a right to maintain private spaces for possessions, is not fundamentally inconsistent with imprisonment and is so fundamental that society would recognize it as reasonable even in the prison context.").

Even liberally construed, Plaintiff's complaint failed to allege any conduct on the part of Defendants that could be considered a violation of the Fourth Amendment in the prison context as construed by the Third Circuit.  Therefore, the

Fourth Amendment claim will be dismissed.  Considering this is Plaintiff's fourth amended complaint, any attempt to make further amendments would be futile.

### B.  Plaintiff's Eighth Amendment Claim Will Be Dismissed With Prejudice.

Initially, the court must resolve whether or not Plaintiff was a pretrial detainee or a convicted and sentenced state prisoner.  The Eighth Amendment does not apply until an inmate has been both convicted of and sentenced for his crimes. *See Graham v. Connor,* 490 U.S. 386, 392 n. 6 (1989); *Hubbard v. Taylor,* 399 F.3d 150, 164 (3d Cir. 2005).  Thus, an inmate awaiting sentencing must look to either the Fifth Amendment's or the Fourteenth Amendment's Due Process Clause for protection. *See Bell,* 441 U.S. at 535 n. 16.  Here, Plaintiff alleges he is both a pretrial detainee and a convicted and sentenced inmate.  (Doc. 62, p. 3.)  He alleges he was arrested on April 22, 2019 while he was on state parole with a state detainer and sentence unrelated to his April 22, 2019 charges resulting in his pretrial detention.  (*Id.*)  Furthermore, Plaintiff alleges that the detainer was dropped.  (*Id.*, p. 8.)  As such, the court finds that absent allegations that a parole violation hearing was held, it appears that Plaintiff was purely a pretrial detainee at the time of the alleged conduct.  *See Cupp v. Cnty. of Lycoming*, Civ. A. No. 3:20-cv-1784, 2021 WL 4478304, at *2 (M.D. Pa. Sept. 30, 2021) (considering plaintiff as pretrial detainee in section 1983 action where facts giving rise to claim occurred while plaintiff was in custody awaiting probation violation hearing); *see also*

13

*United States v. Dobson*, 585 F.2d 55, 59 (3d Cir. 1978) ("[E]ven though we recognize that the basis for a parolee's detention is the underlying sentence from which [they] ha[ve] been paroled, until such time that the parole violator is recommitted after a hearing, and [their] incarceration thereby made certain and fixed as to duration, no term of imprisonment can be said to have commenced or resumed.  In this respect a parole violator is no different than a pretrial detainee who is merely awaiting trial and who, until conviction and sentencing, cannot commence service of a term of imprisonment.").  Therefore, the Eighth Amendment claims will be dismissed with prejudice as this is Plaintiff's fourth complaint and further amendments would be futile.

**C. Plaintiff's Fifth and Fourteenth Amendment Will Be Dismissed With Prejudice.**

The Third Circuit's standard for evaluating a pretrial detainee's claim of inadequate medical treatment under the Due Process Clause is not entirely clear. Due process rights of a pretrial detainee are at least as great as the Eighth Amendment rights of convicted prisoners.  *See Montgomery v. Ray*, 145 F. App'x 738, 740 (3d Cir. 2005). The Third Circuit has suggested that the appropriate standard is "whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt," *Id.*, implying culpability under the Fifth Amendment.  However, the Third Circuit has also evaluated medical care claims raised by pretrial detainees under the Fourteenth

14

Amendment using the Eighth Amendment standard.  *See Hubbard*, 399 F.3d at 166

n. 22 ("[E]ven though the constitutional protections afforded [to] prisoners and

pretrial detainees against inadequate medical care arise from [the prohibition on

cruel and unusual punishment and due process, respectively], the standards

governing the provision of medical care to each class are similar.").

Since the due process rights of pretrial detainees are at least as great as the

Eighth Amendment rights of convicted prisoners, *Ray*, 145 F. App'x at 740, the

court will screen the complaint under the Eighth Amendment standard.  Prison

officials violate the Eighth Amendment when they act with deliberate indifference

to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05

(1976).  To sustain a constitutional claim under the Eighth Amendment for

deliberate indifference to a serious medical need, a plaintiff must make (1) an

objective showing that his medical needs were serious, and (2) a subjective

showing that the defendants were deliberately indifferent to those medical needs.

*See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious

medical need is "one that has been diagnosed by a physician as requiring treatment

or is so obvious that a lay person would easily recognize the necessity for a

doctor's attention."  *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326,

346–47 (3d Cir. 1987) (citation omitted).  A prison official is deliberately

indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff bases his deliberate indifference claims on four separate factual categories: (1) interrupted use of his CPAP machine due to electricity interruptions to his cell block; (2) interrupted use of his CPAP machine due to being moved to SMU housing; (3) interrupted use of his CPAP machine due to the machine being damaged; and (4) interrupted use of his CPAP machine due to lack of distilled water.  (Doc. 62.)  All of these claims are based on a brief interruption of the use of his CPAP machine.  District Courts have repeatedly found that a delay in the use of the CPAP machine, absent any medical harm resulting from such a delay, is not a sufficient basis for a deliberate indifference claim.  *See Merring v. Correctional Care, Inc.*, No. 4:10-CV-0579, 2010 WL 1485893, *3 (M.D. Pa. April 12, 2010) (a delay in distilled water along, without any resulting medical harm, cannot be the basis of a constitutional claim);  *Kreis v. Northampton County Prison*, No. 21-CV-2360, 2022 WL 4236692, *10 (E.D.Pa. Sept. 14, 2022) (alleged short-lived aberration from using the CPAP machine does not equate to a plausible § 1983 claim).  Here, Plaintiff's alleged injuries were "that he woke up gasping for air from suffocation, physical, and mental anguish, and catching Covid-19 twice from exposure."  (Doc. 62, p. 18.)  The court addresses the alleged Covid-19 injury below, but understands the alleged result of the lapse in CPAP usage to be gasping

for air and anguish.  Here, Petitioner has failed to allege any significant or lasting

injury resulting from the CPAP interruption.  Therefore, his complaint raises mere

a short-lived aberration in his use of the CPAP machine resulting in only

temporary concerns.  Thus, his complaint fails to state a plausible deliberate

indifference claim and will be dismissed with prejudice

### D. Plaintiff's First Amendment Claims Will Be Dismissed.

While Plaintiff does not specifically allege First Amendment claims in the

"Legal Claims" section of the fourth amended complaint, he does reference he is

the victim of retaliation by correctional officers.  (Doc. 62.)  Specifically, he

alleges that Defendant Edler retaliated against him on August 19, 2020 by turning

off the electricity to his cell block; that Defendant Edler retaliated against him on

July 6, 2021 by refusing to get him distilled water; that he was retaliated against on

October 19, 2021 by having his CPAP machine turned upside down; and that

Defendant Marshall retaliated against him on December 21, 2021 by refusing to

get him distilled water.  (*Id*., pp. 13, 15–16.) Therefore, the court will liberally

construe this as raising First Amendment Retaliation claims.

However, the court dismissed any First Amendment claims with prejudice

on August 24, 2022.  (Doc. 61.)  Therefore, the court will dismiss these because

the court did not grant to leave to re-plead these claims.

### E. All Claims Associated with Plaintiff Contracting Covid-19 Will Be Dismissed.

Plaintiff was granted leave to file an amended complaint "that correct[s] the deficiencies identified in the accompanying Memorandum," under the court's prior order.  (Doc. 61.)  The prior complaint did not address any liability or claims associated with Plaintiff contracting Covid-19.  (Doc. 43.)  Plaintiff's allegations surrounding the Covid-19 exposure are a unique a separate series of facts unrelated to the interrupted use of Plaintiff's CPAP machine.  A plaintiff may not bring unrelated claims against unrelated parties in a single action.  *See* Fed. R. Civ. P. 18(a); 20(a)(2).  A plaintiff may bring a claim against multiple defendants so long as (1) the claims arise out of the same transaction or occurrence, or series of transactions and occurrences; and (2) there are common questions of law or fact.  *See* Fed. R. Civ. P. 20(a)(2).  Courts have broad discretion in applying Fed. R. Civ. P. 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy. *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009).  However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. *See, e.g., Pruden v. SCI Camp Hill*, 252 Fed.Appx. 436 (3d Cir. 2007) (nonprecedential).  Therefore, the court will dismiss these claims at this point in litigation.

### F.  Plaintiff's Claims Against Prison Supervisors Will Be Dismissed.

Plaintiff has stated Fifth and Fourteenth Amendment claims against Defendant Barnes, Shoemaker, and Ebner.  (Doc. 92, p. 18.)  However, these claims will be dismissed because Plaintiff has failed to state any personal involvement on the part of these Defendants.

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "[An individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of [respondent] superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)).

Here, the only time that Plaintiff discusses Defendants Barnes, Shoemaker, and Ebner in the fourth amended complaint is alleging that on February 21, 2021, at 11:05 a.m., Defendants Entz, DeFrancisco, and Beck were under directives from Defendants Shoemaker, Barnes, and Ebner to put him in the SMU because he

refused to be housed in J-52-cell with an inmate infected with Covid-19.  (Doc. 62, p. 14.)  At best, this could be construed as an attempt at a retaliation claim. However, refusing to relocate within a prison is not a protected constitutional activity.  Therefore, Plaintiff failed to state any First Amendment Violation.

Plaintiff did not allege any involvement by Defendants Barnes, Shoemaker, and Ebner in any of the alleged Fifth or Fourteenth Amendment violations at issue in this case involving the CPAP machine.  Therefore, claims against these Defendants will be dismissed.  Since this is Plaintiff's fourth amended complaint, and the court will not allow him to further amend his pleading, these claims will be dismissed with prejudice.

### G. Plaintiff's Claims Against Lycoming County Will Be Dismissed.

Remaining are Plaintiff's Fifth and Fourteenth Amendment claims against Lycoming County.  (Doc. 62, p. 18.)  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West*, 487 U.S. at 48.  It is well-settled that neither a state nor its agencies, are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a § 1983 suit.  *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991).  However, the Supreme Court has held that,

while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). "Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." *Id.*

The plaintiff bears the burden of identifying the "policy" or "custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). "A policy exists 'when a decisionmaker possess[ing] final authority to establish . . . [public] policy with respect to the action issues an official proclamation, policy, or edict.'" *K.E. v. Dover Area School District*, No. 1:1-CV-1634, 2016 WL 2897614, at *5 (M.D. Pa. 2016) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir.

2003)).  "A custom is 'an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law.'" *K.E.*, 2016 WL 2897614, at *5 (quoting *Natale*, 318 F.3d at 584).  "A plaintiff may also establish a policy or custom [and a *Monell* claim] when a 'policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"  *K.E.*, 2016 WL 2897614, at *5 (quoting *Natale*, 318 F.3d at 584).  "A government entity exhibits deliberate indifference when it 'disregard[s] a known or obvious consequence of [its] action."  *K.E.*, 2016 WL 2897614, at *5 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 712 (3d Cir. 1993) (citing *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 724–25 (3d Cir. 1989) ("[A] plaintiff must do more than show the defendant could have averted her injury and failed to do so."); *Shadie v. Forte*, No. 3:10-CV-2121, 2011 WL 607447, at *6 (M.D. Pa. 2011) (finding that knowledge of incidents of abuse by a special education director, alone, is not enough to impute his action to a School District under § 1983).  "Stated another way . . . a plaintiff must demonstrate that 'policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this

failure, at least in part, led to [the] injury." *M.S. ex rel. Hall v. Susquehanna Township School Dist.*, 43 F.Supp.3d 412, 421 (M.D. Pa. 2014) ("*Susquehanna*") (quoting *Turner v. City of Phila.*, 22 F. Supp. 2d 434, 437 (E.D. Pa. 1988)).

Here, Plaintiff has failed to demonstrate that policy makers at Lycoming County were aware of similar conduct at LCP concerning inmates with CPAP machines. Therefore, he cannot establish a claim against Lycoming County based on the lack of a policy on CPAP machines at LCP under *Monell*. Therefore, this claim will be dismissed. Since this is Plaintiff's fourth amended complaint, and the court will not allow him to further amend his pleading, this claim will be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the court will dismiss the complaint. Considering this is Plaintiff's fourth amended complaint, the court finds that further amended pleadings would be futile. As such, the court will not grant Plaintiff leave to amend his pleading further.

An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 31, 2023